UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 14-0648 PA (DFMx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | Steven Rensel, et al. v. Fluidmaster, Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Julieta Lozano | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS - COURT ORDER

Before the Court is a Motion for Class Certification filed by plaintiffs Steven Rensel and Brian Kirsch, (collectively, "Plaintiffs") (Docket No. 72). Also before the Court is defendant Fluidmaster, Inc.'s Motion to Strike/Exclude Plaintiffs' Testing Evidence Submitted in Support of Plaintiff's Motion for Class Certification (Docket No. 76). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for October 27, 2014, is vacated, and these matters taken off calendar.

**I.     Background**

Plaintiffs filed a class action alleging that Fluidmaster, Inc.'s ("Defendant") toilet connectors and coupling nuts are inherently defective and prone to fracture. Plaintiffs seek to represent two classes: people who own or reside in a structure that contains such a device or those who purchased it and/or had it fail resulting in water damage.

On June 5, 2014, Defendant issued a Demand for Inspection Pursuant to Fed. R. Civ. P. 34(a)(1)(b). Subsequently, on June 24, Defendant and two of its experts inspected Rensel and Kirsch's toilet connectors and coupling nuts. At the time, Defendant made clear to Plaintiffs that they might seek an additional inspection.

In July and August, the parties exchanged telephone calls and emails in an attempt to agree on a plan to test the Rensel and Kirch's toilet connectors and coupling nuts. The parties, however, could not agree on a testing location or testing protocol. On August 22, Plaintiffs notified Defendant's counsel that the destructive testing would proceed on September 11 and 12.

On September 5, 2014, Defendant served Plaintiffs with a formal objection. Specifically, Defendant objected to the testing protocol and the location. Defendant also put Plaintiffs on notice that the connectors and coupling nuts were critical to their defense and the destructive testing could spoil the evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 14-0648 PA (DFMx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | Steven Rensel, et al. v. Fluidmaster, Inc. | | |

On September 11 and 12, despite the objection, Plaintiffs performed the destructive testing. They stressed and poured liquid nitrogen over the nuts, removed ribs from one of the nuts, and split one into two pieces. The results were submitted in support of Plaintiffs' Motion for Class Certification. Plaintiffs also submitted the declarations of David O. Kazmer, Michael Bak, Walter J. Fallows, and Dr. Tim A. Osswald that reference or rely on the testing evidence.

Plaintiffs contend that the testing did not spoil the evidence. Defendant, on the other hand, argues that the testing prevents any further testing of the integrity of the nuts, that Plaintiffs tampered with the outside of the nuts and that it has been irreparably prejudiced.[1]

Defendant asks that the Court exclude the testing evidence pursuant to either its inherent power to sanction litigation misconduct or under Federal Rule of Civil Procedure 37(c)(1). Defendant suggests that this will likely terminate Plaintiffs' claims, which is an appropriate sanction because Plaintiffs' destruction was willful. Defendant argues that Plaintiffs should have obtained a protective order prior to proceeding with the destructive testing inasmuch as the parties could not agree on a testing location, time, or protocol.

Sanctions pursuant to Rule 37 are generally imposed to punish violations of discovery orders. However, no discovery order had been issued when Plaintiffs conducted their testing. Accordingly, this Court will analyze the propriety of a sanction under its inherent authority.

**II.   Analysis**

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. Chambers v. Nasco, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). When litigants engage in abusive tactics in bad faith, courts possess an inherent power to administer sanctions. Wm. T. Thompson Co. v. Gen. Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)). Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. Wm. T. Thompson Co., 593 F. Supp. at 1455 (internal citations omitted). In other words, purposeful impairment of the opposing party's ability to discover information may justify the imposition of sanctions. See Capellupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989).

---

[1]   Defendant contends that Plaintiffs' testing severely limits its ability to inspect the ferrule on both of the coupling nuts because the ferrules were clamped in a vice without pads which may have distorted or obscured tool marks. Tool marks that it suspects would have revealed that tools were used contrary to product's installation instructions. Defendant contends this crucial evidence is lost and irretrievable. Defendant also asserts that the threaded barrel of one of the nuts had not yet been separated from the remainder of the toilet connector and the cone washer within the nut had not been fully examined. Defendant believes that the testing altered the form of the devices.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 14-0648 PA (DFMx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | Steven Rensel, et al. v. Fluidmaster, Inc. | | |

      Although a party seeking destructive testing is not strictly required to get a protective order from the court, it is nevertheless recommended.  A party conducting destructive testing without a protective order risks evidentiary sanctions, such as an adverse inference instruction to the jury or even outright dismissal of their case.  See e.g., Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 613 (D. Md. 2006).  The unilateral alteration of key evidence through destructive testing has resulted in sanctions.  See e.g., Graff v. Baja Marine Corp., CIV.A. 2:06-CV-68WCO, 2007 WL 6900792 (N.D. Ga. Dec. 20, 2007) aff'd, 310 F. App'x 298 (11th Cir. 2009).

      Here, both sides agree that Plaintiffs' connectors and coupling nuts are important evidence in this case.  This Court finds that Plaintiffs knew or should have known that they were in possession of evidence relevant to the pending litigation.  Thus, they had a duty to preserve the evidence.

      Plaintiffs acted in bad faith by unilaterally conducting destructive testing over Defendant's objection and without seeking a protective order.  Plaintiffs argue that Defendant "never requested or sought any further inspection or testing" after the June 24 inspection.  (Howard Decl. ¶ 4.)  However, the fact that Defendant had not yet requested the opportunity for a further inspection does not mean that they did not want or waived their right to conduct further testing.

      Plaintiffs were on notice that the testing could spoil the evidence and severely prejudice the Defendant.  Plaintiffs characterize Defendant's lack of agreement on the testing as an abusive litigation practice and claim Defendant was "ignoring the testing issue."  Plaintiff decided to conduct the testing – without Defendant or its experts present – because Defendant "refused Plaintiffs' invitation to participate in the testing."  (Opp'n 8.)  This ostensible invitation was, in reality an ultimatum to participate in testing that followed Plaintiffs' protocol, at Plaintiffs' testing location, and on Plaintiffs' timeline.

      By unilaterally conducting destructive testing over Defendant's objection, Plaintiffs presumably purposefully impaired Defendant's ability to discover information critical to its defense.  There was no urgency to test these specific nuts, particularly when Plaintiffs' class claims allege a design defect applicable to anyone who purchased Fluidmaster toilet connectors.  Presumably there were other coupling nuts available to test.  There is no reason that Plaintiffs could not have supported their Motion for Class Certification with testing results from off the shelf connectors and coupling nuts.  Nor have Plaintiffs provided any explanation for their failure to seek a protective order prior to conducting the testing.  The Court therefore concludes that Plaintiffs' testing was done in bad faith.

**III.    Sanctions**

      Having determined that Plaintiffs were under a duty to preserve the evidence and that the testing was conducted in bad faith, this Court may sanction Plaintiffs' behavior.  See Wm. T. Thompson Co., 593 F. Supp. at 1455.  The court does not condone the unilateral potential alteration of key evidence or the failure of counsel to conduct themselves with the professionalism that this Court expects of members of the bar of this Court.  See Graff,  2007 WL 6900792 at *3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 14-0648 PA (DFMx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | Steven Rensel, et al. v. Fluidmaster, Inc. | | |

Defendant seeks to exclude all testing evidence and all arguments made in reliance on that evidence. The sanction Defendant seeks would deprive plaintiffs Rensel and Kirsch of the evidence they need to prove their individual claims and would effectively terminate their individual cases. This, in turn, would render them inadequate class representatives because they would be subject to defenses that would not be typical of the defenses of the class. Fed. R. Civ. P. 23(a)(3). Consequently, as Defendant concedes the exclusion of the evidence would eventually result in the dismissal of the individuals' claims and denial of the Motion for Class Certification.

Before issuing such a drastic sanction, the Court will consider lesser sanctions. Kopitar v. Nationwide Mut. Ins. Co., 266 F.R.D. 493, 496 (E.D. Cal. 2010). Because the overall impact of the testing on Defendant's case is not precisely known, the Court does not reach the issue of whether spoliation has occurred and is not ruling to exclude or strike the evidence at this time. Nevertheless, "the court will not tolerate litigants tampering with the very component that they contend is defective." Graff, 2007 WL 6900792 at *4. The conduct of Plaintiffs' counsel warrants sanctions. Over Defendant's objection, Plaintiffs conducted destructive testing related to the individual claims in this case. Plaintiffs purposefully sought to impair Defendant's ability to discover additional information related to the connectors and coupling nuts. Accordingly, the imposition of sanctions pursuant to the Court's inherent powers is justified. See Capellupo, 126 F.R.D. at 551. Plaintiffs' counsel's conduct fell well below the standards of professionalism for attorneys permitted to practice before this Court. Plaintiffs' counsel has demonstrated that they were willing to risk the class claims in order to obtain an unfair tactical advantage in pursuing the individual claims. The Court finds that striking Plaintiffs' class allegations in their Complaint is an appropriate sanction.[2]

**Conclusion**

This Court grants Defendant's motion to the following extent: the class allegations in Plaintiffs' Complaint are stricken. Accordingly, Plaintiffs' Motion for Class Certification is denied as moot. Because the class allegations are stricken, the ex parte applications to file documents under seal in support of or in opposition to the Motion for Class Certification are denied as moot as is the Motion to Stay the Case pending a decision by the Judicial Panel on Multidistrict Litigation (Docket No. 60). The parties have 14 days from the date of this Order to arrange with the Court's clerk to retrieve the documents they sought to file under seal.

|  | : |
|---|---|
| Initials of Preparer | jloz |

---

[2] When conduct that ordinarily would be sanctionable under Rule 37 falls outside the express terms of the rule, courts have looked to the rule as a guide to determine the proper level of response to the offense. See e.g., E.E.O.C. v. Jacksonville Shipyards, Inc., 690 F. Supp. 995, 998 (M.D. Fla. 1988). Among the sanctions contemplated by Rule 37 are "striking pleadings in whole or in part" and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii) & (v).